## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

| | | |
|---|---|---|
| **STACY FISHER,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 14-1011** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| | ************ | |

### MEMORANDUM OPINION GRANTING DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

Stacy Fisher ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 19).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 19) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1983, has a high-school education, and has no past relevant work. R. at 18. Plaintiff applied for SSI on June 29, 2011 (with a protective application date of June 8, 2011), alleging disability beginning on January 1, 2009 (later amended to June 29, 2011), due to bipolar disorder, obesity, depression, and panic attacks. R. at 12, 95-103, 117-18, 130. The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 34-55. On July 22, 2013, ALJ Larry K. Banks held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified. R. at 350-66. On August 12, 2013, the ALJ issued a decision finding Plaintiff not disabled since the application date of June 8, 2011. R. at 9-21. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on January 29, 2014. R. at 4-8. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 2, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

### A.    Opinion Evidence

Suresh Khetan, M.D., conducted consultative examinations of Plaintiff on August 31, 2010, and September 20, 2011 (R. at 196-201, 282-87), which the ALJ noted in his decision: "An examining physician, Dr. Suresh Khetan, stated on August 31, 2010, that work related activities like walking, carrying, standing, driving, and bending should be problematic due to excessive weight.  He then stated on September 20, 2011, that these activities should not be a problem for [Plaintiff]."  R. at 18 (citations omitted); *see* R. at 198, 284.

On September 7, 2010, Shakuntala Dhir, M.D., conducted a consultative psychiatric evaluation of Plaintiff.  R. at 202-07.  Dr. Dhir noted that Plaintiff's thought processes were clear and goal-oriented, and her concentration and memory on testing were good.  R. at 203.  "She was able to do serial 7s.  Recall was 2/3 after five minutes."  R. at 203.  Dr. Dhir's diagnoses included mood disorder not otherwise specified and a GAF rating of 50.  R. at 203.[2]  Dr. Dhir noted that Plaintiff "currently has physical problems which prevent her from working."  R. at 204.  "With good support—medication and therapy prognosis for a psychiatric gradual recovery is favorable."  R. at 204.

---

[2]  The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000).  A GAF rating between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id.* at 34; *see Martise v. Astrue*, 641 F.3d 909, 917 n.5 (8th Cir. 2011); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999).  The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

On August 19, 2011, a state agency consultant, S. Boyer, using the psychiatric review technique ("PRT") under 20 C.F.R. §§ 404.1520a and 416.920a, evaluated Plaintiff's mental impairments under Listings 12.04 and 12.06 relating to affective disorders and anxiety-related disorders. R. at 39-40. The consultant opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two repeated episodes of decompensation of extended duration. R. at 39. The consultant did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings. R. at 39. The consultant thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 42-43) and opined that she was moderately limited in her ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to (3) respond appropriately to changes in the work setting. Plaintiff otherwise was not significantly limited. R. at 42-43.

On October 12, 2011, another state agency consultant, S.K. Najar, M.D., assessed Plaintiff's physical RFC. R. at 40-42. Dr. Najar opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 41. Dr. Najar found that Plaintiff's activities of daily living "are limited due to the obesity and indicate limits in walking and standing are reduced to 2 hr/day." R. at 41. Because of her morbid obesity, Plaintiff frequently could balance

and occasionally could stoop, kneel, crouch, and climb ramps and stairs (but never ladders, ropes or scaffolds).   R. at 41-42.   Plaintiff had no manipulative, visual, communicative, or environmental limitations.  R. at 42.

On March 3, 2012, another state agency consultant, W. Hakkarinen, M.D., again assessed Plaintiff's physical RFC.  R. at 290-97.  Dr. Hakkarinen opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of at least two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 291.  Because of her limitations due to severe obesity, Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes or scaffolds).  R. at 292.  Plaintiff's obesity also would require limiting her exposure to hazards that required flexibility and maneuverability.  R. at 294. She had no manipulative, visual, or communicative limitations, however.  R. at 293-94.  Dr. Hakkarinen noted that Plaintiff's activities of daily living indicated that she "can use public transportation, shop for food and clothing, prepare simple meals and do household chores."  R. at 295.

On March 14, 2012, a state agency consultant, F. Ewell, Ph.D., "affirmed as written" S. Boyer's August 2011 opinion.  R. at 298.

## B.    Plaintiff's Testimony

Plaintiff testified that she lived with her mother, who received disability benefits.  R. at 354.  Plaintiff, who stood five feet and nine inches tall and weighed 452 pounds, alleged that her weight prohibited her from working.  R. at 354-55.  According to Plaintiff, she could stand "for only a few minutes."  R. at 355.  "It hurts my legs and goes straight up my back and I feel like I'm going to collapse."  R. at 355.  Sitting for five minutes hurt her legs, back, and neck, but she

only took Tylenol for her pain.  R. at 356.  Plaintiff took Metro Access to travel to the hearing. R. at 356.

During a typical day, Plaintiff got out of bed, ate breakfast, and took her medication for depression and anxiety.  R. at 356-57.  She did not experience side effects from the medication, which did not help much.  R. at 357.  Plaintiff sometimes did not want to get out of bed because of her depression and anxiety.  R. at 357.  "I sleep a lot and I suffer from panic attacks and I just get really nervous when I get panic attacks," which she had been experiencing for about 12 years.  R. at 357.  Plaintiff had never been hospitalized for her panic attacks, and she could calm her herself down after about an hour.  R. at 357-58.  Her panic attacks had worsened, however, as her head "has been feeling more tight during the panic attacks."  R. at 359.

Plaintiff's mother usually accompanies her when she rides the bus.  R. at 359.  According to Plaintiff, standing on the bus is difficult.   R. at 359-60.  Plaintiff alleged that she could not do work that alternated between sitting and standing because her "back would hurt too much" as well as her feet.  R. at 360.  She had not raised the issue of her back and foot pain with her doctor, however (R. at 360), although she was not sure if her Medicaid would pay for such treatment (R. at 361).

Plaintiff also testified that she did not like to leave her residence.  R. at 360.  In the previous three weeks, she had left her home fewer than 10 times for appointments and shopping. R. at 361.

C.      **VE Testimony**

The VE testified that a hypothetical person with Plaintiff's same age, education, and work experience could perform the light, unskilled[3] jobs of pre-assembler of printed circuit boards, mail clerk, or router if that person could perform no more than light work and (1) could not climb ropes, ladders, or scaffolds; (2) could not work around dangerous machinery or unprotected heights; (3) could not crouch or crawl but occasionally could stoop; (4) required a sit-stand option alternating between 20 and 30 minutes at a time; (5) could perform only work that was not complex and involved simple instructions; (6) required no more than occasional contact with co-workers, supervisors, or the public; and (7) would be off task 5% of the workday because of focus and concentration problems.   R. at 362-64.   If this person had the same limitations but could perform no more than sedentary work,[4] the person could perform the unskilled, sedentary jobs of taper of printed circuit boards, addresser, or food and beverage order clerk.  R. at 19, 364.  The VE testified that her testimony regarding a sit-stand option was based on her experience as a vocational rehabilitation counselor rather than on the *Dictionary of Occupational Titles*.[5]  R. at 365.  According to the VE, a person "off-tasked up to 20 percent of

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §416.967(b).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* at § 416.968(a).

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a).

[5] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

the work day" because of focus and concentration problems could not perform any work.  R. at

365.  A person's loss of productivity between 15% and 20% renders employment unavailable.

R. at 365.

## III

### Summary of ALJ's Decision

On August 12, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial

gainful activity since June 29, 2011; and (2) had an impairment or a combination of impairments

considered to be "severe" on the basis of the requirements in the Code of Federal Regulations;

but (3) did not have an impairment or a combination of impairments meeting or equaling one of

the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) had no past relevant

work; but (5) could perform work in the national economy.  R. at 14-19.  The ALJ thus found

that she was not disabled since the application date of June 8, 2011.  R. at 19.

In so finding, the ALJ found that Plaintiff experienced (1) mild restriction in activities of

daily living; (2) moderate difficulties in social functioning; (3) moderate difficulties with regard

to concentration, persistence, or pace; and (4) no episodes of decompensation of extended

duration.  R. at 15.  The ALJ also found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 416.967(a) except sit/stand
> option (stand 20-30 minutes before alternating to sitting 20-30 minutes); no
> crawling or crouching; can perform stooping on an occasional basis; and limited
> to performing simple instructions with occasional contact with co-workers,
> supervisors and the public; and due to concentration and focus problems,
> [Plaintiff] may be off task 5% of the work day.

R. at 16.

The ALJ gave "some" weight to the opinions of Drs. Najar and Hakkarinen "because the

limitation on standing and walking to 2 hours is supported by [Plaintiff's] morbid obesity."  R. at

18 (citing R. at 288).   The ALJ gave "more" weight to Dr. Khetan's August 2010 opinion

"because [Plaintiff's] obesity does cause limitations in walking, carrying, standing, driving, and bending." R. at 18 (citing R. at 197, 203, 288). The ALJ gave "some" weight to the opinion of S. Boyer "because it is consistent with [Plaintiff's] treatment history." R. at 18 (citing R. at 187-88, 202-03, 215, 232, 249, 261, 282, 322-24, 335, 337).

The ALJ considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 16.

> Several elements in the record call into question the credibility of [Plaintiff's] allegations. She reported at a consultative examination that her weight and depression keep her from standing on her feet for even a few minutes. However, she arrived there by taking public transportation. She did not follow advice from her psychiatrist to set an alarm, get out of the house by noon, and get sunlight exposure. On multiple occasions she was described as resistant to seeing a therapist, meeting with a vocational counselor, getting a job, or volunteering. Furthermore, her activities of daily living go beyond limitations that would preclude work and include personal care, preparing meals, laundry, sweeping, going out 3-4 times a week, walking, navigating public transportation, shopping in stores, handling money, reading, watching TV, going out to eat, and regular church attendance.

R. at 16-17 (citations omitted).

# IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[6]

---

[6] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R.  §§ 404.1520(a)(4)(iv),  404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.*  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is

---

in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290;  20 C.F.R.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## <u>Substantial Evidence Standard</u>

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

## Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[7] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-7, ECF No. 15-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 5. In particular, she contends that the ALJ's decision failed to set forth a narrative discussion setting forth how the evidence supported each conclusion. *Id.* Plaintiff then maintains that the ALJ failed to address her sleepiness in assessing her RFC. *Id.* Plaintiff also asserts that the ALJ failed to include any limitations on her concentration, persistence, or pace in his RFC assessment, instead limiting her to performing simple instructions. *Id.* at 6.

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637.

Plaintiff first maintains that remand is warranted because the ALJ failed to explain the basis for his determination that Plaintiff required a sit-stand option at 20- to 30-minute intervals, that she was limited to performing simple instructions, or that she may be off task for 5% of the workday. Pl.'s Mem. Supp. Mot. Summ. J. 5, ECF 15-1 (citing R. at 16). Plaintiff fails to

demonstrate prejudice from the ALJ's inclusion of a sit-stand option in the RFC assessment, however. *See Farrell v. Colvin*, Civil No. TMD 11-2995, 2014 WL 1764928, at *13 & n.15 (D. Md. Apr. 30, 2014). Moreover, there is no evidence that the absence of a sit-stand option in the hypothetical questions to the VE would have resulted in a different finding by the ALJ regarding the availability of jobs in the national economy. *See id.* at *13 n.15. Remanding this case for the Commissioner to explain the basis for the sit-stand option in the RFC assessment thus would be futile. *See id.* (citing, *inter alia*, *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (stating that ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination")).

Plaintiff's assertion that the Court should remand this case for the ALJ to explain his determination that Plaintiff would be off task for 5% of the workday also is unavailing, as Plaintiff does not point to any evidence that would suggest a greater limitation. *See Stitely v. Colvin*, __ F. App'x __, No. 14-2302, 2015 WL 4621292, at *1 (4th Cir. Aug. 4, 2015) (per curiam) ("[The claimant] points to no 'overlooked' evidence, aside from his own allegations, which the court found not entirely credible, that would substantially aid his case."). Plaintiff's contention that the ALJ failed to address in his RFC assessment her sleeping for 10 to 12 hours per day because of her depression (Pl.'s Mem. Supp. Mot. Summ. J. 5, ECF No. 15-1 (citing R. at 15)) also is without merit, as Plaintiff "provides no analysis of how a 'more detailed' assessment . . . might have resulted in a different outcome" beyond finding that Plaintiff would be limited to work involving only "occasional contact with co-workers, supervisors and the public" (R. at 16). *Seifert v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-1051, 2013 WL 1881065, at *2 (D. Md. May 2, 2013). In fact, the ALJ observed that, in July 2007, Plaintiff's mother noted that, "although [Plaintiff] was sleepy during the day, that was not the case when

she is interested in something and has something to do." R. at 17 (citing R. at 274). In any event, Plaintiff "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of [her] disability claim." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

Plaintiff finally contends that, although the ALJ determined that she had moderate difficulties with regard to concentration, persistence, or pace, the ALJ failed to include any limitation on her concentration, persistence, or pace in his RFC assessment, instead limiting Plaintiff to performing simple instructions. Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 15-1 (citing R. at 15-16). In finding that Plaintiff's mental impairments did not meet or medically equal the criteria of Listing 12.04 found in 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04, the ALJ found that, "[w]ith regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties. On testing, she was able to do serial 7's but recall only 2/3 after 5 minutes." R. at 15 (citing R. at 203). The ALJ's hypothetical questions to the VE included a capacity "to perform work involving only simple instructions, no complex tasks" and to do "no more than occasional contact with co-workers, supervisors, or the public," where, "due to focus and concentration issues and symptoms, the person may be off-task five percent of the work day." R. at 363. In his decision, the ALJ's assessment of Plaintiff's RFC included a finding that she was "limited to performing simple instructions with occasional contact with co-workers, supervisors and the public" and "may be off task 5% of the work day" because of concentration and focus problems. R. at 16.

The Fourth Circuit has held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*,

631 F.3d 1176, 1180 (11th Cir. 2011)).  "[T]he ability to perform simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."  *Id.*  The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC.  *Id.*

The ALJ in this case found that Plaintiff's difficulties in maintaining concentration, persistence, or pace were moderate.  R. at 15.  The ALJ then found that Plaintiff's RFC was "limited to performing simple instructions with occasional contact with co-workers, supervisors and the public; and due to concentration and focus problems, [she] may be off task 5% of the work day."  R. at 16.  Thus, rather than merely finding that Plaintiff's moderate difficulties in concentration, persistence, or pace limited her to work involving simple instructions (R. at 16), the ALJ in his RFC assessment and hypothetical questions to the VE also accounted for Plaintiff's concentration and focus problems that would cause her to be off task 5% of the workday (R. at 16, 363), which relate to her ability to stay on task.  *See Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) ("Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary.").  Any error by the ALJ in limiting Plaintiff to work involving simple instructions because of her moderate difficulties in maintaining concentration, persistence, or pace was harmless because the ALJ's RFC assessment and the VE's testimony accounted for Plaintiff's ability to stay on task.  *See Geisler v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) (finding that ALJ harmlessly erred in basing step-three determination on

claimant's difficulties in performing complex tasks because, *inter alia*, ALJ's RFC assessment accounted for limitations in concentration, persistence, or pace); *Johnson v. Comm'r, Soc. Sec.*, Civil Case No. GLR-13-3419, 2014 WL 4662392, at *3 (D. Md. Sept. 17, 2014) ("[The claimant] contends that the ALJ's hypothetical did not incorporate the 'moderate difficulties' the ALJ found her to have in the areas of social functioning and concentration, persistence, or pace. While the ALJ did not include the words 'moderate difficulties' in the hypothetical, he provided concrete descriptions of what he meant by 'moderate difficulties' in both areas by limiting [the claimant] to performing simple instructions with no more than occasional contact with coworkers, supervisors, or the public, and in noting that her work should allow for her to be off-task up to 5 percent of the workday. Because that RFC assessment was supported by substantial evidence, and because it was accurately conveyed to the VE in the hypothetical question, there was no need for the ALJ to use the term 'moderate difficulties,' which is an extraordinarily broad and vague description of a claimant's precise functional capabilities." (citations omitted)).

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

**VII**

**<u>Conclusion</u>**

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 19) is

**GRANTED**.   Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**.   The

Commissioner's final decision is **AFFIRMED**.  A separate order shall issue.

Date: September 9, 2015                    _____/s/_____

                                                            Thomas M. DiGirolamo
                                                            United States Magistrate Judge